IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cr. No. 6:99-266 |
| vs. | ) | |
| MICHAEL SCOTT CASH | ) | **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the motion of Michael Scott Cash ("Cash") for return of property. Cash, who is appearing *pro se*, is an inmate in the custody of the Federal Bureau of Prisons. On August 11, 2009, the matter was referred to this court by the Honorable Margaret B. Seymour, United States District Judge, to submit findings and a recommendation.

## BACKGROUND

On April 9, 1999, Drug Enforcement Administration ("DEA") agents executed a federal warrant to search Cash's residence located at 214 Robin Hood Road in Greenville, South Carolina. The agents found approximately 220 grams of methamphetamine, a small quantity of marijuana, and other drug paraphernalia in the home. A search of the master bedroom closet also yielded $6,700 in United States currency, which the agents seized along with other items. During the search, the agents arrested Cash and Pamela Hopkins at the residence. Cash was released on bond on April 13, 1999.

On April 21, 1999, this court appointed the Federal Public Defender ("FPD") as counsel for Cash. Also on April 21, attorney Randall Scott Hiller filed a notice of appearance on behalf of Cash. On April 22, 1999, this court issued an order terminating

the FPD and substituting Hiller as retained counsel. On May 20, 1999, Cash was placed back into federal custody for violating the terms of his pretrial supervision by failing a drug test. Cash remained in federal custody until June 28, 1999, when he entered bond and was placed on house arrest with electronic monitoring.

The government instituted administrative forfeiture proceedings against the $6,700 pursuant to 21 U.S.C. § 881[1] in May 1999. On May 28, 1999, the government sent notice of the seizure via certified mail to David Plowden at the address of the FPD office in Greenville. Notice of the seizure was also sent to Cash and Pamela Hopkins at the address of Cash's residence. Because Cash failed to contest the seizure by June 29, 1999, the DEA administratively forfeited the funds.

On October 18, 2001, Cash was sentenced to imprisonment for 151 months to be followed by five years supervised release.

On April 18, 2005, Cash filed a motion for return of property, which the government opposed.[2] On August 24, 2007, the Honorable Margaret B. Seymour, United States District Judge, issued an order finding that "the government's attempt to notify Cash of the impending forfeiture did not comport with the requirements of due process." Cash

---

[1] Section 881 provides in pertinent part:

> (a) Subject property
> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> ***
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. §881(a)(6).

[2] On April 18, 2005, Cash also filed a motion to return property in his 28 U.S.C. § 2255 case. *See Cash v. United States*, C.A. No. 6:05-cv-00338-MBS. On March 27, 2006, Judge Seymour denied that motion as moot as an identical motion was pending in Cash's criminal case (3/27/06 order at 13).

was in federal custody during the time that the notice of forfeiture was published and mailed to his home. Further, the notice mailed to Cash's former attorney was insufficient because he was no longer Cash's attorney at that time. Accordingly, Judge Seymour held that the administrative forfeiture action was void (8/24/07 order at 4-5).

However, Judge Seymour, further noted as follows:

> Nonetheless, the court's order does not effect an automatic return of the currency to Cash. *See Babb v. U.S. Drug Enforcement Agency*, 146 F. App'x 614, 620 (4th Cir. 2005) ("Even when the government is foreclosed from perfecting its title to drug-related currency via forfeiture proceedings . . . the government may retain the property until the claimant files an equitable action or motion and demonstrates that he is lawfully entitled to the return of the property. In response to such an action or motion, the government may still establish its ownership by demonstrating the property at issue is § 881(a) property."). Before any of the currency may be returned to Cash, he must demonstrate that he is lawfully entitled to the currency, which the government may rebut by showing a legitimate reason to retain the property. *Babb*, 146 F. App'x at 620 ("A party who claims that the government must return seized property still must demonstrate lawful entitlement to the property and an equitable right to its return. Even when the claimant does not face the more daunting task of challenging forfeiture, he must make at least a threshold showing of lawful entitlement. . . . The burden then shifts to the government, which must 'demonstrate that the property is . . . proceeds traceable to illegal drug transactions.'" (quoting *Alli-Balogun v. United States*, 281 F.3d 362, 372 (2d Cir. 2002))).

(8/24/07 order at 5 n.6).

Based upon the foregoing, on September 21, 2007, Cash filed a motion for return of his property, and the government filed its opposition on November 9, 2007. On August 11, 2009, the pending motion was referred to this court to submit findings and a recommendation.

3

**ANALYSIS**

"[E]ven when the government is foreclosed from perfecting its title to drug-related currency via forfeiture proceedings . . . , the government may retain the property until the claimant files an equitable action or motion and demonstrates that he is lawfully entitled to the return of the property. In response to such an action or motion, the government may still establish its ownership by demonstrating the property at issue is § 881(a) property." *Babb. v. U.S. Drug Enforcement Agency*, 146 Fed. Appx. 614, 2005 WL 2053349, *5 (4th Cir. 2005). "There is no exception to the prohibition against property rights in § 881(a)(6) property that applies when the government does not quiet title through forfeiture proceedings. Only an innocent owner can claim ownership rights when such property was lawfully seized." *Id.* at *4.

Cash argues that the $6,700 was part of his life savings and "was legitimately earned during the years of 1991 through 1995 while Mr. Cash was employed at various locations." He further claims that "[d]uring those years, Mr. Cash's monthly average income was more than double the amount of his average monthly expenses and he was easily able to save a good portion of his earnings" (m. to return property at 1).

According to the presentence investigation report, on April 9, 1999, a federal search warrant was issued for an Airborne Express package addressed to Larry Orr at 214 Robin Hood Road, Greenville, South Carolina. Agents with the DEA found the package to contain 280 grams of methamphetamine. A controlled delivery of the package was attempted at the Robin Hood Road address. A female, later identified as Pamela Hopkins, accepted delivery of the package. Approximately two minutes after acceptance of the package, agents executed a federal search warrant for the premises. Petitioner Cash was lying on a bed in the master bedroom, and the Airborne Express package was found on the floor beside him. After receiving his *Miranda* rights, Cash admitted to using Larry Orr's name and sending $4000.00 in currency to California to purchase methamphetamine that

4

had been delivered in the Airborne Express package. Agents found two separate envelopes containing cash in the amount of $6000.00 and $700.00 in the master bedroom closet. Agents also found one gram of methamphetamine in the nightstand of the master bedroom and found GNC Inositol Powder, which is used to dilute methamphetamine, in the master bedroom closet. Cash also admitted that, in addition to sending $4000.00 in cash in exchange for methamphetamine, he had sent money at least six or seven times to California for methamphetamine.

Additionally, approximately one week later, Cash came to the DEA office to pick up some of his property. At that time, he asked about $10,000.00 in United States currency that he had hidden in a light fixture at Robin Hood Road. When Cash found out that the agents had not recovered the $10,000.00 in currency from the light fixture, he made the statement that someone he knew had knowledge of the hidden money and that the $10,000.00 was money he had made from selling methamphetamine.

The government argues that Cash has not met his burden in establishing that the $6,700.00 in currency was obtained through legitimate means. This court agrees. Cash has failed to provide any income tax returns for the period of time during which the money was seized nor has he provided any legitimate sources of income that would account for the $6,700.00 found during the execution of the 1999 search warrant. A review of the presentence report indicates that Cash told his probation officer that he had been self-employed for approximately 10 years and that he earned approximately $20,000 per year on average. Although the probation officer obtained records that indicated Cash had worked as a car salesman from 1993 to 1997, Cash never provided information or records to reflect a legitimate source of income after 1997.

Cash acknowledged to agents during the execution of the search warrant that he had sent money six or seven times in Airborne Express packages to California in exchange for methamphetamine. Additionally, on April 19, 1999, Cash admitted that he

had stashed approximately $10,000.00 in the light fixture in the bathroom of the same house where the $6,700.00.00 was found. Cash admitted that the $10,000.00 in currency was proceeds from the sale of methamphetamine. Therefore, the government argues Cash cannot claim he is an innocent owner. This court agrees.

The government further argues that the $6,700.00 in currency has been conclusively established as Section 881(a) property and thus was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Cash appealed his sentence to the Fourth Circuit Court of Appeals alleging that the district court erred when it increased his base offense level for relevant conduct by attributing drug quantities equivalent to the sum of the $10,000.00. The Fourth Circuit Court of Appeals found that the district court "did not err in crediting the agent's version [of the $10,000.00] as more reliable than Cash's statement, given the uncontested fact that drugs and $6,700 in drug proceeds were discovered in Cash's home following his arrest." *United States v. Cash*, 63 Fed. Appx. 661, 2003 WL 1984294, *1 (4th Cir. 2003). Additionally, the Fourth Circuit went on to state that the discovery of the drugs and the $6,700.00 in drug proceeds were further reason for the court to find that a large amount of money hidden in the home would also be drug proceeds. *Id.* Accordingly, the Fourth Circuit affirmed the district court on this and other issues.

## **CONCLUSION AND RECOMMENDATION**

Cash has failed to show that he is lawfully entitled to the $6,700.00. Further, even if he had met his burden, the government has demonstrated that the money is proceeds traceable to illegal drug transactions and thus Section 881(a) property. Accordingly, it is recommended Cash's motion to return property (doc. 91) be denied.

September 11, 2009                                  s/William M. Catoe
Greenville, South Carolina                      United States Magistrate Judge